## THE SOLANO. THE CHALLAMBA. OCEAN MOTORSHIP CO. v. HAMMOND LUMBER CO. et al.

(District Court, S. D. California, S. D. November 25, 1924.)

Nos. 1191, 1189.

Collision ⊜94—Overtaking steam vessel held in fault.

An overtaking vessel which, without signal, attempted to pass the overtaken vessel on her starboard side at the same time another vessel was passing on her port side, and at a distance of only about 50 feet, though there was some 400 feet of room in the channel on that side, held solely in fault for a collision between the other two vessels by causing the overtaken vessel to sheer to port against her helm.

In Admiralty. Suits by the Hammond Lumber Company against the steam schooner Solano, and against the motorship Challamba, with cross-libel by the Ocean Motorship Company, claimant of the Solano. Decree for libelant against the Solano.

Farnham P. Griffiths and Joseph B. McKeon, both of San Francisco, Cal., F. W. Turcotte and Edward R. Young, both of Los Angeles, Cal., and McCutchen, Olney, Mannon & Greene, of San Francisco, Cal., for Hammond Lumber Co.

Ira S. Lillick, of San Francisco, Cal., for the Solano.

Pillsbury, Madison & Sutro, of San Francisco, Cal., and Overton, Lyman & Plumb, of Los Angeles, Cal., for the Challamba and Ocean Motorship Co.

JAMES, District Judge. On the 12th of November, 1922, the steam schooner Halco, under full cargo load and while proceeding down the Columbia river, came into collision with the motorship Challamba. The steam schooner Solano was being navigated at the time on the same course. The Halco suffered considerable damage in her forward part, but was able to proceed down the river to Astoria without aid. The Challamba was slightly damaged. The owners of the Halco filed a libel against both the Challamba and Solano. The latter vessels, by their owners, denied responsibility for the accident. Claimant Ocean Motorship Company, owner of the Challamba, filed a cross-libel against the Halco and Solano.

The three vessels, fully loaded, had left their anchorage at Skamokawa, about 10 miles up the river, early that morning. The Halco got away first and was about a mile and a half distant when the Solano followed. The Challamba came next behind the Solano. In length the ships measured, respectively: Solano, 215 feet; Challamba, 262.2 feet; the Halco, 220 feet. The Challamba,

a twin screw motorboat, was the fastest, while the Solano had an advantage over the Halco in speed of about a knot and a half. Each vessel was at all times in charge of an experienced river pilot. As they proceeded downstream, the Challamba passed the Solano and drew up to the Halco, leaving the Solano perhaps a quarter of a mile behind. The Challamba was very close to the Halco when a bend in the river was turned, this point in the testimony being referred to as the place where the hull of the wrecked steamer Welsh Prince was located. From this point downward for a distance of about two and a quarter miles the navigable channel is shown by the charts to mark a practically straight course and, except for the first mile or so, to have a width of a thousand feet or more, within which width the depth of the water is in excess of 30 feet, which it was shown would be more than sufficient to sustain vessels of the draft of either of the three here concerned. As the vessels proceeded down this straight course, the Halco in the lead held the center of the channel, and all three traveled at their full normal speed. This speed was probably accelerated somewhat by an ebb tide, which, as nearly as can be ascertained from the evidence, was at its first stage. Proceeding thus, the Challamba overhauled the Halco and essayed to pass on the port side. This she did at a distance of from 100 to 150 feet. Meanwhile the Solano had approached the Halco and began to overlap her on the starboard side. The evidence varies somewhat as to what the relative positions of the Halco and Solano were during the events which immediately transpired, but it is a fair deduction from all of the evidence to say that the Solano was fairly abreast of the Halco when the latter's direction was changed from straight ahead to port. The witnesses for the Halco, including the pilot and the steersman, testified that the Solano as she came alongside at a distance of about 50 feet seemed to take the Halco along with her, and that during that action the Halco's bow sheered to port and the ship was forced in the direction of the starboard quarter of the Challamba, which had, the moment before, almost if not entirely cleared the Halco. The testimony of the witnesses of the Halco and of the Challamba agreed upon the point that, notwithstanding the Challamba had almost if not quite gone past the Halco, at the approach of the Solano the Halco seemed to catch up, and that she did, the moment before the collision, gain on the Challamba. As the

wheelsman of the Halco said: "We seemed to go ahead; it brought the Challamba's stern right against our rigging again. As the Solano came up, it looked like the Challamba was coming back or had decreased her speed."

The pilot of the Challamba asserted that he was making full speed ahead until after the collision, and that he had not changed it since taking a direct course below the bend of the river. The pilot of the Halco testified that, upon observing the near situation of the Solano, the vessel being almost alongside when he noticed her, and about 50 feet off, he considered the position one of some danger and gave the signal for half speed ahead, in order to, as he phrased it, "drop out of the box"; that as the Solano came on, the Halco was swung around toward port; that he gave the order to "hard aport" the helm, which was immediately done, but that his ship would not answer to the rudder and continued to sheer to port, whereupon he signaled for full speed astern; that an instant later the bow of the Halco collided with the Challamba.

The Solano did not stop, but continued on her way uninjured. The wheelsman of the Halco fully corroborated the pilot. He testified that the order to "hard aport" the helm was quickly executed, and that one of the mates standing by seized the wheel and lent his assistance, but that the ship failed to respond. The captain of the Halco was not on the bridge at the time, but looking over the side he saw the Solano coming close and, as he testified, shouted a protest to her pilot. The pilot of the Solano denied that he was as close to the Halco as the latter's witnesses placed him, and said that he was about 100 feet away, and his captain made the distance twice that much. Neither of the overhauling vessels gave any signals of their desire to pass nor received any signals from the Halco indicating that the way was open. The Challamba was at fault in this respect, but it occupied the superior position with respect to the Solano of having practically if not fully passed the Halco before the Solano's bow lapped the stern of the latter. It was apparent then to the Solano that she was bound to add to the danger of the Halco's situation by attempting to pass at least until the Challamba was well ahead. If she had waited and had then needed more room to make the passing, she could have without doubt secured it by the exchange of proper and usual signals with the navigator of the Halco. It was her duty in any event to have signaled and

awaited a response from the Halco indicating the latter's knowledge of her presence and that the way was clear. Had such signals been given, the Halco would have had the right to withhold her response until the Challamba had well cleared, or give the warning whistle provided by the navigation rules. All of the circumstances being considered, the Solano's fault was inexcusable.

The evidence is, moreover, satisfactory to the conclusion that the Solano was closer to the Halco than either her captain or pilot was willing to admit, and the fact I think is that the pilot, wheelsman, and captain of the Halco gave a better estimate of the distance as being about 50 feet. Unless the Halco suddenly shifted her course to port when the Solano came abreast of her, her sudden sheering in that direction must, as a matter of strongest probability, have been due to the water pressure or suction caused by the movement of the Solano. There was no apparent reason why she should have changed her course, for she was proceeding straight away in the center of the channel which continued ahead of her in a direct course for more than a mile. Her pilot and helmsman deny that any such change of direction was made. At the point where the accident occurred the Solano might have gone safely by had she adapted her course nearer the outside of the channel, for the chart shows that if the Halco was in the middle of the channel at the time, then there was at least 400 feet of 30-foot water to the right of her. This was also affirmed to be the fact by the Halco's pilot. The greater distance (admittedly from 100 to 150 feet) that the Challamba was from the Halco, and the fact that the former's stern had completely or almost advanced ahead of the bow of the Halco, renders it unlikely that the Halco took in being diverted from her course was in any degree attributable to the Challamba.

I am convinced that the responsibility for the collision lies with the Solano alone, and that she should satisfy the Halco's claim for the damage suffered.

The Challamba's damage was nominal, but whatever it amounts to, the Solano should answer for it also, as well as for the costs.

Counsel for the Halco will prepare the decree. As it will be necessary to appoint a commissioner to take evidence and report the amount of damage, it is preferred that the person to be appointed be agreed upon by the parties.